UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-4939** |
| **N. BURL CAIN, WARDEN** | **SECTION "J"(5)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.[1]

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   Factual and procedural history

Petitioner, Joshua Johnson, is a state prisoner incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.  On October 14, 2008, Johnson was charged by bill of information with two counts of armed robbery in violation of La. R.S. 14:64.[2]  He pleaded not guilty.[3] Prior to trial, the two counts were severed and petitioner proceeded to trial on the first count alone.[4]  On May 5, 2010, after a two-day jury trial, he was found guilty of armed robbery.

The following facts were set forth by the Louisiana First Circuit Court of Appeal on direct appeal.

> On September 18, 2008, sixty-year-old James Baldwin was inside his room at the Value Travel Inn in St. Tammany Parish, passing time before work. As Baldwin sat on the bed, with the front door partially ajar, a black male forced his way into the room and held Baldwin at gunpoint. The intruder, later identified by Baldwin as the defendant, started rummaging through the room and demanding that Baldwin give him money. When Baldwin advised that he only had a dollar in his pocket, the perpetrator repeatedly hit him on the head with the gun. The perpetrator then took Baldwin's wallet, cellular phone, and the dollar from his pocket. The perpetrator disconnected the telephone and fled. Shortly thereafter, Baldwin went to a neighboring room and contacted the police.
>
> In response to the call, Sergeant George Cox, of the St. Tammany Parish Sheriff's Office, was dispatched to the Value Travel Inn to investigate the robbery report.

---

[2] State Rec., Vol. 1 of 5, Bill of Information.  Petitioner was charged along with two co-defendants, Bruce Owens, Jr. and Leval Butler.  In April 2010, the State amended the charges against Owens and Butler to two counts of simple robbery.

[3] *Id.*, Minute Entry 11/3/08.

[4] State Rec., Vol. 1 of 5, Trial Transcript, pp. 88A-89.

2

When he arrived at Room 313, Sgt. Cox made contact with Baldwin, who advised that he had been robbed and beaten by a black male. Baldwin explained that the perpetrator wore a white shirt and had some type of black cloth covering his head. The perpetrator also had a glove on one of his hands. Sgt. Cox also talked to the occupant of a neighboring room, who provided descriptions of two suspicious black males she observed in the area. According to this neighbor, one of the men was wearing a dark colored shirt and red shoes. The second male was wearing a white shirt with "graffiti" on it and a pair of yellow shoes. Sgt. Cox noted that neither of these clothing descriptions matched the description of the perpetrator provided by Baldwin.

Shortly thereafter, the owner/manager of the Value Travel Inn arrived and allowed Sgt. Cox to access the video surveillance footage from the cameras monitoring the parking lot. In the surveillance footage, Sgt. Cox observed a Ford Taurus drive into the parking lot. The vehicle pulled up on the side of the property where Baldwin's room was located. One male subject quickly exited the vehicle wearing a white shirt with something black covering his head. This individual then quickly moved toward the breezeway near Baldwin's room. Meanwhile, as another individual attempted to back out in the Taurus, the vehicle crashed into a dumpster before driving to a different area of the parking lot and parking. Two black males, who fit the description previously provided by the neighbor, exited the Taurus and walked back and forth around the parking lot. The men returned to the vehicle several times. Moments later, the subject with the white shirt and black head covering returned to the area and ran toward the vehicle. All three men entered the Taurus and the vehicle drove away.

Aware that the perpetrator had taken Baldwin's cellular phone, Sgt. Cox sought to have the phone located. The tracking results suggested the general location of the phone. Sgt. Cox immediately drove toward that area. As he exited the interstate, Sgt. Cox observed a gold Ford Taurus with three individuals inside. Sgt. Cox immediately radioed for backup. Shortly thereafter, Sgt. Lance Vitter, of the St. Tammany Parish Sheriff's Office, arrived in the area and initiated a traffic stop. The defendant, Owens, and Butler were taken in for questioning. A black glove was recovered from the console of the vehicle. A matching black glove had been located in the parking lot at the Value Travel Inn.

Based upon information provided by Butler and Owens, which was corroborated by the surveillance footage, Sgt. Cox compiled a photographic

3

array with the defendant's photograph and presented it to Baldwin for identification. Baldwin immediately identified the defendant as the individual who had entered his room and robbed him.

Butler and Owens testified at the defendant's trial. Both men admitted that they accompanied the defendant to the Value Travel Inn on the morning in question, but denied ever entering the victim's room. They also claimed they were unaware that the defendant intended to rob anyone when they arrived at the motel. Butler explained that he and Owens had been riding around in the Taurus, a vehicle they rented in exchange for drugs, when they saw the defendant and asked him for some money for gas. The defendant entered the vehicle and agreed to provide the gas money. According to both Butler and Owens, when they arrived at the motel, the defendant momentarily left the area while they remained in the parking lot. Later, when the defendant ran back to the vehicle, the men left the area. Both men admitted that they were aware that the defendant had robbed someone when he returned, because he had some keys, a cell phone, and a portable television in his possession.

In his trial testimony, Butler admitted that the gloves found in the vehicle and at the scene belonged to him. He explained that he wore the gloves when driving because his hands sweat. Butler claimed he took the gloves off when they arrived at the Value Travel Inn on the morning in question. He denied seeing the defendant with the gloves. DNA analysis of the glove found inside the vehicle revealed a profile that was consistent with at least one individual. Leval Butler could not be excluded as the donor of that sample. Analysis of the glove found at the property revealed a full DNA profile consistent with at least two DNA donors. The major DNA donor profile was consistent with Leval Butler. Both the defendant and the victim were excluded as possible donors for the sample collected from this glove. Tara Brown, an expert in DNA analysis and molecular biology, testified that it is possible for an individual to have briefly worn the glove in question without depositing enough skin cells for a conclusive DNA analysis.[5]

On June 21, 2010, Johnson was sentenced to thirty-five years imprisonment at hard

---

[5] *State v. Johnson*, 2010-1768, 2011 WL 2616848, at *1-3 (La. App. 1st Cir. 5/6/11); State Rec., Vol. 4 of 5.

4

labor without benefit of parole.[6] The trial court denied Johnson's motion for reconsideration of sentence.[7]

On direct appeal, Johnson raised five assignments of error: (1) the trial court erred by sustaining the State's objection to testimony which the defense sought to elicit to impeach the credibility of Leval Butler's testimony; (2) the trial court erred in imposing an excessive sentence; (3) the trial court erred in failing to comply with Louisiana Code of Criminal Procedure article 894.1; (4) the trial court erred in denying the motion to reconsider sentence; and finally, by *pro se* supplemental brief (5) he was denied effective assistance of counsel because he was deprived of the right to have his own DNA testing done and his own expert witness present at the *Daubert* hearing.[8] The Louisiana First Circuit Court of Appeal affirmed his conviction and sentence on May 6, 2011.[9] Johnson filed an application for writ of certiorari or review in the Louisiana Supreme Court. In that application, however, he asserted only one assignment of error (*i.e.*, claim number one above that the trial court erred in sustaining the State's objection to testimony which the defense sought to elicit to impeach the credibility of

---

[6] State Rec., Vol. 3 of 5, Transcript of sentencing proceedings held June 21, 2010, p. 7. The trial court also denied petitioner's motion for new trial and for post-verdict judgment of acquittal.

[7] State Rec., Vol. 1 of 5, Order signed June 29, 2010.

[8] State Rec., Vol. 5 of 5.

[9] *State v. Johnson*, 2010-1768, 2011 WL 2616848 (La. App. 1st Cir. 5/6/11); State Rec., Vol. 4 of 5.

Leval Butler's testimony).[10]

While the writ application was pending, the State pursued a multiple bill.[11] On September 6, 2011, the trial court vacated the original sentence and sentenced Johnson as a third-felony offender to eighty-six years imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[12]  Johnson did not appeal the habitual offender adjudication or sentence.  The Louisiana Supreme Court denied his writ application on his single assignment of error without stated reasons on November 18, 2011.[13] Johnson did not seek review to the United States Supreme Court.

On January 29, 2013, Johnson filed his federal application for *habeas corpus* relief.[14] In his petition, Johnson asserts the following four claims:

(1) He was denied effective assistance of counsel because he was deprived of his own DNA testing on the glove and his own expert witness at the

---

[10] State Rec., Vol. 5 of 5, Application for writ of certiorari or review to the Louisiana Supreme Court, p. 2.

[11] State Rec., Vol. 4 of 5; copy of multiple bill of information filed June 7, 2011.

[12] State Rec., Vol. 4 of 5, Transcript of September 6, 2011 multiple bill hearing, p. 17.

[13] *State v. Johnson*, 2011-1179 (La. 11/18/11), 75 So.3d 449; State Rec., Vol. 4 of 5.

[14] Rec. Doc. No. 1, Petition. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed the petition on January 29, 2013, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

        *Daubert* hearing;

(2)     The trial court erred by sustaining the State's objection to testimony which the defense sought to elicit to impeach the credibility of Leval Butler's testimony;

(3)     His sentence was excessive;

(4)     The trial court erred in failing to comply with Louisiana Code of Criminal Procedure article 894.1.[15]

The State concedes the federal application is timely, but argues that petitioner has not exhausted his state court remedies as to three of his four claims.[16] The State contends the mixed petition should be dismissed for failure to exhaust state remedies, or alternatively, on the merits.[17] The Court agrees that petitioner presents a mixed petition, which contains both exhausted and unexhausted claims, and is subject to dismissal without prejudice at this time.

## II.    Exhaustion

A petitioner normally must first exhaust his remedies in the state courts before seeking *habeas corpus* relief from the federal courts. 28 U.S.C. § 2254(b)(1)(A); *see also Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (*citing Rose v. Lundy*, 455 U.S. 509, 519-20 (1982).

---

[15] Rec. Doc. No. 1, Petition, pp. 6-11.

[16] Rec. Doc. No. 11, pp. 3-4.

[17] Rec. Doc. No. 10, Answer.

"A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387.

A petitioner properly exhausts state remedies only by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (requiring state prisoners, in order to fully exhaust their claims, "to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

Furthermore, a petitioner's federal claim must have been "fairly presented" at each level of the state court system. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (*citing Picard v. Connor*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (*citing Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997)). Nor is the fair presentation standard satisfied if the state court must read

beyond the petition or brief, for instance to a lower court opinion, to identify the claim. *Baldwin*, 541 U.S. at 32.

As the State correctly notes, Johnson has exhausted his state remedies for his claim of trial court error in sustaining the State's objection to defense counsel's attempt to impeach Leval Butler's credibility. Johnson presented this claim on direct appeal in the Louisiana First Circuit and the Louisiana Supreme Court. The same is not true, however, for the remaining three claims asserted in his federal *habeas* application. Although he fairly presented the three claims to the Louisiana First Circuit, he did not even attempt to assert these claims in his writ application to the Louisiana Supreme Court.[18] Because these three claims were not presented, fairly or otherwise, to the state's highest court, the claims are unexhausted.

Johnson's federal application is a mixed petition, containing both exhausted and unexhausted claims, and should be dismissed without prejudice. *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998) ("A *habeas* petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice."). Although the Supreme Court has recognized the availability of a stay and abeyance approach for "mixed" petitions due to the AEDPA's one-year statute of limitations, it has held that such a remedy must be exercised only in "limited" circumstances. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). The Court has cautioned that "because granting a stay effectively excuses a

---

[18] State Rec., Vol. 5 of 5, Application for writ of certiorari or review, p. 2.

petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id*. The record in this case discloses no good cause for Johnson's failure to properly and fully exhaust each of his claims in the state courts.

Accordingly, the petition should be dismissed without prejudice to allow Johnson to fully exhaust available state court remedies as to all of his claims, unless he amends the *habeas* petition to dismiss or withdraw the unexhausted claims and proceed with only exhausted claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (*citing Rose*, 455 U.S. at 510).

## RECOMMENDATION

**IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[19]

---

[19] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that

New Orleans, Louisiana, this  3rd  day of _____July_____, 2014.

                                                               **MICHAEL B. NORTH**
                                          **UNITED STATES MAGISTRATE JUDGE**

---

period to fourteen days.